MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ARMANDO CALDERON CARALAMPIO (a/k/a DANIEL CALDERON), BYRON ALIRIO RAMOS BATEN, and MARTIN MEJIA CANAN, *individually and on behalf of others similarly situated,*

                              *Plaintiffs*,

            -against-

EVA'S 8TH STREET FOOD LLC (D/B/A EVA'S KITCHEN), STEVE AYALA, GEORGE AYALA (A.K.A. ALEX), JACK E. JACOBS, NICHOLAS DOE, LISARDO DOE, and JOSE DOE,

                             *Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Armando Calderon Caralampio (a/k/a Daniel Calderon), Byron Alirio Ramos Baten, and Martin Mejia Canan, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Eva's 8th Street Food LLC (d/b/a Eva's Kitchen), ("Defendant Corporation"), Steve Ayala, George Ayala (a.k.a. Alex), Jack E. Jacobs, Nicholas Doe, Lisardo Doe, and Jose Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Eva's 8th Street Food LLC (d/b/a Eva's Kitchen), Steve Ayala, George Ayala (a.k.a. Alex), Jack E. Jacobs, Nicholas Doe, Lisardo Doe, and Jose Doe.

2.       Defendants own, operate, or control a healthy foods restaurant, located at 11 W 8th Street, New York, NY 10011 under the name "Eva's Kitchen".

3.      Upon information and belief, individual Defendants Steve Ayala, George Ayala (a.k.a. Alex), Jack E. Jacobs, Nicholas Doe, Lisardo Doe, and Jose Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the restaurant located at 11 W 8th Street, New York, NY 10011.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, washing dishes and containers, assisting the cook, taking out the trash, plumbing, sweeping and mopping the floors, cutting lettuce in the morning, preparing muffins to be baked, cleaning tables, the inside of the fridge, and the bathroom, wiping down the windows on the exterior side of the restaurant, and twisting and tying up cardboard boxes (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

10.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

11.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*.

and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a healthy foods restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

17.    Plaintiff Armando Calderon Caralampio (a/k/a Daniel Calderon) ("Plaintiff Calderon" or "Mr. Calderon") is an adult individual residing in Kings County, New York.

18.    Plaintiff Calderon was employed by Defendants at Eva's Kitchen from approximately October 2017 until on or about September 17, 2018.

19.    Plaintiff Byron Alirio Ramos Baten ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in Kings County, New York.

20.    Plaintiff Ramos was employed by Defendants at Eva's Kitchen from approximately September 2016 until on or about May 2018.

21.    Plaintiff Martin Mejia Canan ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Kings County, New York.

22.    Plaintiff Mejia was employed by Defendants at Eva's Kitchen from approximately February 2017 until on or about September 7, 2018.

*Defendants*

23.    At all relevant times, Defendants owned, operated, or controlled a healthy foods restaurant, located at 11 W 8th Street, New York, NY 10011 under the name "Eva's Kitchen".

24.    Upon information and belief, Eva's 8th Street Food LLC (d/b/a Eva's Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 11 W 8th Street, New York, NY 10011.

25.    Defendant Steve Ayala is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Steve Ayala is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Steve Ayala possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26.    Defendant George Ayala (a.k.a. Alex) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant George

- 5 -

Ayala (a.k.a. Alex) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant George Ayala (a.k.a. Alex) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.   Defendant Jack E. Jacobs is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jack E. Jacobs is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Jack E. Jacobs possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.   Defendant Nicholas Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nicholas Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Nicholas Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.   Defendant Lisardo Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Lisardo Doe is sued individually

in his capacity as a manager of Defendant Corporation. Defendant Lisardo Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.   Defendant Jose Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jose Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Jose Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31.   Defendants operate a healthy foods restaurant located in the Greenwich Village section of Manhattan in New York City.

32.   Individual Defendants, Steve Ayala, George Ayala (a.k.a. Alex), Jack E. Jacobs, Nicholas Doe, Lisardo Doe, and Jose Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

33.   Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

36.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.    Upon information and belief, Individual Defendants Steve Ayala, George Ayala (a.k.a. Alex), and Jack E. Jacobs operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

- 8 -

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

38.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.    In each year from 2016 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

41.    Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

42.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Armando Calderon Caralampio*

43.    Plaintiff Calderon was employed by Defendants from approximately October 2017 until on or about September 17, 2018.

44.    Defendants ostensibly employed Plaintiff Calderon as a delivery worker.

45.    However, Plaintiff Calderon was also required to spend a significant portion of his work day performing the non-tipped duties described above.

46.    Although Plaintiff Calderon ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

47.    Plaintiff Calderon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

48.    Plaintiff Calderon's work duties required neither discretion nor independent judgment.

49.    Throughout his employment with Defendants, Plaintiff Calderon regularly worked in excess of 40 hours per week.

50.    From approximately October 2017 until on or about September 17, 2018, Plaintiff Calderon worked from approximately 8:45 a.m. until on or about 4:30 p.m., five days a week and from approximately 8:15 a.m. until on or about 1:15 p.m., one day a week (typically 43.75 hours per week).

51.    Throughout his employment, Defendants paid Plaintiff Calderon his wages by check.

52.    From approximately October 2017 until on or about January 2018, defendants paid Plaintiff Calderon $9.00 per hour for 37 hours.

53.    From approximately February 2018 until on or about September 17, 2018, Defendants paid Plaintiff Calderon $10.85 per hour for the first 37 hours worked and approximately $13.00 per hour for 3 hours.

54.    Plaintiff Calderon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

55.   For example, Defendants required Plaintiff Calderon to work an additional 30 minutes past his scheduled departure time five days a week and 15 minutes past one day a week, and did not pay him for the additional time he worked.

56.   Plaintiff Calderon was never notified by Defendants that his tips were being included as an offset for wages.

57.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Calderon's wages.

58.   Defendants withheld a portion of Plaintiff Calderon's tips.

59.   specifically, Defendants withheld a considerable portion of the tips catering order customers wrote in for Plaintiff Calderon.

60.   When Plaintiff Calderon asked his managers, Jose and Nick Doe for an explanation for the withholding of the catering tips, they informed him that they used the tip money to cover the costs of the Uber transportation and to give some compensation to the kitchen workers.

61.   Although Plaintiff Calderon was required to enter a code into a computer to keep track of his start and stop times, the computer never gave him a slip with the time of departure when he left the job; he complained to the manager about this and the manager told him that the computer only gave slips with the time at start time or for breaks, but not for the departure time.

62.   Defendants required Plaintiff Calderon to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

63.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Calderon regarding overtime and wages under the FLSA and NYLL.

64.   Defendants did not provide Plaintiff Calderon an accurate statement of wages, as required by NYLL 195(3).

65.     In fact, Defendants adjusted Plaintiff Calderon's paystubs so that they reflected inaccurate wages and hours worked.

66.     Defendants did not give any notice to Plaintiff Calderon, in English and in Spanish (Plaintiff Calderon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

67.     Defendants required Plaintiff Calderon to purchase "tools of the trade" with his own funds—including two bicycles, bicycle repairs and maintenance, one helmet, and shirts.

*Plaintiff Byron Alirio Ramos Baten*

68.     Plaintiff Ramos was employed by Defendants from approximately September 2016 until on or about May 2018.

69.     Defendants ostensibly employed Plaintiff Ramos as a delivery worker.

70.     However, Plaintiff Ramos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

71.     Although Plaintiff Ramos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

72.     Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73.     Plaintiff Ramos's work duties required neither discretion nor independent judgment.

74.     Throughout his employment with Defendants, Plaintiff Ramos regularly worked in excess of 40 hours per week.

75.     From approximately September 2016 until on or about May 2018, Plaintiff Ramos worked from approximately 10:00 a.m. until on or about 5:00 p.m., Mondays through Fridays and

from approximately 5:00 p.m. until on or about 12:00 a.m., on Saturdays (typically 42 hours per week).

76.    Throughout his employment, Defendants paid Plaintiff Ramos his wages by check.

77.    From approximately September 2016 until on or about December 2017, Defendants paid Plaintiff Ramos $9.00 per hour.

78.    From approximately January 2018 until on or about May 2018, Defendants paid Plaintiff Ramos $10.85 per hour.

79.    Plaintiff Ramos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

80.    For example, on some occasions, Defendants required Plaintiff Ramos to work an additional 30 minutes past his scheduled departure time, and did not pay him for the additional time he worked.

81.    Defendants never granted Plaintiff Ramos any breaks or meal periods of any kind.

82.    Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

83.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos's wages.

84.    Defendants withheld a portion of Plaintiff Ramos's tips.

85.    specifically, Defendants withheld a considerable portion of the tips catering order customers wrote in for Plaintiff Ramos.

86.    Although Plaintiff Ramos was required to enter a code into a computer to keep track of his start and stop times, the computer never gave him a slip with the time of departure when he left the job  .

87.     Defendants required Plaintiff Ramos to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

88.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

89.     Defendants did not provide Plaintiff Ramos an accurate statement of wages, as required by NYLL 195(3).

90.     In fact, Defendants adjusted Plaintiff Ramos's paystubs so that they reflected inaccurate wages and hours worked.

91.     Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

92.     Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, a chain and lock, lights, and a bell.

*Plaintiff Martin Mejia Canan*

93.     Plaintiff Mejia was employed by Defendants from approximately February 2017 until on or about September 7, 2018.

94.     Defendants ostensibly employed Plaintiff Mejia as a delivery worker.

95.     However, Plaintiff Mejia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

96.     Although Plaintiff Mejia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

97.     Plaintiff Mejia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

98.   Plaintiff Mejia's work duties required neither discretion nor independent judgment.

99.   From approximately February 2017 until on or about August 2018, Plaintiff Mejia worked from approximately 10:00 a.m. until on or about 5:20 p.m., Mondays through Fridays and from approximately 10:30 a.m. until on or about 4:00 p.m., Saturdays (typically 42.33 hours per week).

100.   From approximately August 2018 until on or about September 7, 2018, Plaintiff Mejia worked from approximately 10:00 a.m. until on or about 5:20 p.m., Mondays through Fridays (typically 36.66 hours per week).

101.   Throughout his employment, Defendants paid Plaintiff Mejia his wages by check.

102.   From approximately February 2017 until on or about December 2017, Defendants paid Plaintiff Mejia $9.00 per hour for 37 hours a week.

103.   From approximately January 2018 until on or about September 7, 2018, Defendants paid Plaintiff Mejia $10.85 per hour for 37 hours a week.

104.   Plaintiff Mejia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

105.   For example, Defendants required Plaintiff Mejia to work an additional 20 minutes past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

106.   Plaintiff Mejia was never notified by Defendants that his tips were being included as an offset for wages.

107.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

108.   Defendants withheld a portion of Plaintiff Mejia's tips.

109.  specifically, Defendants withheld a considerable portion of the tips catering order customers wrote in for Plaintiff Mejia.

110.  Although Plaintiff Mejia was required to enter a code into a computer to keep track of his start and stop times, the computer never gave him a slip with the time of departure when he left the job; he complained to the manager about this and the manager told him that the computer only gave slips with the time at start time or for breaks, but not for the departure time.

111.  Defendants required Plaintiff Mejia to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

112.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

113.  Defendants did not provide Plaintiff Mejia an accurate statement of wages, as required by NYLL 195(3).

114.  In fact, Defendants adjusted Plaintiff Mejia's paystubs so that they reflected inaccurate wages and hours worked; specifically, from approximately February 2017 until on or about August 2018, Plaintiff Mejia's pay subs only showed him working 37 hours, when in reality he had worked more than 42 hours each week.

115.  Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

116.  Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including a bicycle, a raincoat, rain pants, and bicycle repairs.

*Defendants' General Employment Practices*

117.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

118.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

119.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

120.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

121.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

122.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

123.      The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

124.     These Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

125.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

126.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

127.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

128.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

129.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

130.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Calderon worked.

131.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

132.   On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

133.   Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

134.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

135.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

136.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

137.   Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

138.   Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees'

primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

139.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

140.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

141.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

144.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

145.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

146.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

147.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

148.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

149.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

151.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

152.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

155.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

156.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

157.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

160.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

161.   Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW

162.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.   Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

164.   Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW

165.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.   With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the

regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours

worked; and the number of overtime hours worked, as required by NYLL 195(3).

167.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

168.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses

for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R.

§ 531.35; N.Y. Lab. Law §§ 193 and 198-b.

170.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of

notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in

this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        October 15, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:       /s/ Michael Faillace
     Michael Faillace [MF-8436]
     60 East 42nd Street, Suite 4510
     New York, New York 10165
     Telephone: (212) 317-1200
     Facsimile: (212) 317-1620
     *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 24, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Martin Mejia Canan

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     24 de Septiembre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 24, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Armando Calderon Caralampio (aka Daniel)

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              24 de septiembre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 2, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Byron Alirio Ramos Baten**

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                        02 de octubre de 2018

Date / Fecha:

*Certified as a minority-owned business in the State of New York*